IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JORGE ROQUE, | : |
| Plaintiff | : |
| | : No. 1:16-CV-02506 |
| v. | : |
| | : (Judge Rambo) |
| CAPTAIN MICHAEL L. OTT, et al., | : |
| Defendants | : |

## **MEMORANDUM**

Presently before the Court for disposition is Defendants' motion to dismiss Plaintiff's complaint. (Doc. No. 15.) For the reasons set forth below, Defendants' motion will be denied.

### I.  Background

On December 19, 2016, Plaintiff Jorge Roque, an inmate at the State Correctional Institution at Houtzdale, Pennsylvania, filed a complaint pursuant to 42 U.S.C. § 1983 against the Deputy Warden of the Lebanon County Correctional Facility, Timothy Clements, and several correctional officers employed at that facility. (Doc. No. 1.) Roque claims that on October 13, 2015, three inmates from Block 2: Crespo, Pratts, and Martinez, approached him and threatened to harm him. (Id. at 5.) Plaintiff alleges that he spoke to Correctional Officers Gonzalez

1

and Derr about this threat and he was subsequently placed in restricted housing for refusing to lock up in his cell that day. (Id.)

After a disciplinary hearing before Defendants Clements and Ott on Plaintiff's refusal to lock up in his cell, Plaintiff served twenty (20) days in the restricted housing unit. (Id.) After twenty (20) days in the restricted housing unit, Plaintiff alleges that he was informed by Correctional Officer Ludwig that he was being reassigned to Block 2 of the facility. (Id.) Plaintiff alleges that he "voiced his concern for his safety" to officials and that Sergeant Santoni told him that his options were to return to Block 2 or to be placed back in the restricted housing unit. (Id.) Plaintiff alleges that having no other choice, and after having told these prison officials that he was in eminent danger and specifically naming the three inmates who had threatened him, Plaintiff was placed back on Block 2. (Id. at 5, 7.) Within fifteen (15) minutes of returning to Block 2, Plaintiff alleges that the three inmates beat him so severely that he was taken to the hospital where he was diagnosed with a broken jaw, given pain medication, a liquid diet and required surgery. (Id. at 7.)

Plaintiff alleges that the Defendants failed to protect him from an assault by these inmates in violation of his rights under the Eighth Amendment. (Id.) Defendants have filed a motion to dismiss (Doc. No. 15) and brief in support (Doc. No. 16.) After being directed by this Court, Plaintiff filed an oppositional brief.

(Doc. No. 21.) Defendants filed a reply brief the following day. (Doc. No. 22.) Accordingly, this matter is ripe for disposition.

## II.  Legal Standard

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). The Court's inquiry is guided by the standards of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009). Under Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of pleading." See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible. Id. The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. As the Supreme Court instructed in Iqbal, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the United States Court of Appeals for the Third Circuit has identified

3

the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d Ed. 2004)).

In conducting its review of a complaint, the court must be mindful that a document filed pro se is "to be liberally construed." Estelle v. Gamble, 429 U.S.

97, 106 (1976). A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Haines v. Kerner, 404 U.S. 519, 520–21 (1972).

## III. Discussion

In their motion to dismiss, Defendants provide that Defendants Clements and Ott should be dismissed because Plaintiff has not alleged any facts suggesting that these supervisory officials were personally involved in the incident underlying this action. (Doc. No. 16.) Defendants also argue that Defendants Gonzalez and Derr should be dismissed for failure to allege any personal involvement. Finally, with regard to Defendants Ludwig and Santoni, Defendants argue that they should be dismissed because the alleged facts do not indicate that either of these Defendants knew of a substantial risk of harm to Plaintiff, and in any event, they acted reasonably under the circumstances. (Id.)

42 U.S.C. § 1983 provides a cause of action to redress violations of federal law committed by state officials. See 42 U.S.C. § 1983. Section 1983 is not a source of substantive rights; rather, it merely provides a remedy for violations of constitutional rights. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 815 (1985). To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate

5

that: (1) the conduct complained was committed by a person acting under color of state law; and (2) the conduct deprived the complainant of rights secured under the Constitution or federal law. Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 590 (3d Cir. 1998).

"The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners against the 'unnecessary and wanton infliction of pain' " and "impose[s] a duty upon prison officials to take reasonable measures 'to protect prisoners from violence at the hands of other prisoners.' " Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997) (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994)); Whitley v. Albers, 475 U.S. 312, 319 (1986). Although "[i]t is not … every injury suffered by one prisoner at the hands of another that translates into constitutional liablity for prison officials responsible for a victim's safety," "[b]eing violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.' " Farmer, 511 U.S. at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 345 (1981)). Accordingly, a "prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Farmer, 411 U.S. at 828.

"In order for a plaintiff to prove a constitutional violation in a failure-to-protect case, a claimant must demonstrate that: (1) he is 'incarcerated under conditions posing a substantial risk of serious harm;' and (2) the prison officials

6

acted with 'deliberate indifference to his health and safety.' " Ogden v. Mifflin Cnty., 2008 WL 4601931 (M.D. Pa. 2008) (citing Farmer, 511 U.S. at 834). Deliberate indifference requires that the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. "The knowledge element of deliberate indifference is subjective, not objective knowledge, meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001). Finally, the plaintiff must show that "the official's deliberate indifference caused the harm." Bistrian v. Levi, 696 F.3d 352, 367 (3d Cir. 2010).

Moreover, liability may not be imposed under § 1983 on the traditional standards of respondeat superior. Capone v. Marinelli, 868 F.2d 102, 106 (3d Cir. 1989) (citing Hampton v. Holmesburg Prison Officials, 546 F.2d 1017, 1082 (3d Cir. 1976)). In Capone, the court noted "that supervisory personnel are only liable for the § 1983 violations of their subordinates if they knew of, participated in or acquiesced in such conduct." 868 F.2d at 106 n.7. The plaintiff must allege that the defendant was personally involved in the events or occurrences that underlie the claim. See Atkinson v. Taylor, 316 F.3d 257, 270-71 (3d Cir. 2003); Rode v.

Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("[a] defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.").

With respect to Defendants Clements and Ott, Plaintiff alleges that he appeared before them at his disciplinary hearing as a result of his refusal to lock up in his cell. (Doc. No. 1 at 5.) Plaintiff alleges that at the hearing, he explained to Defendants Clements and Ott that he refused to lock up because three inmates on Block 2 threatened him that if he were to remain on Block 2, he would get jumped. (Id.) Plaintiff further alleges that he explained that Defendants Gonzalez and Derr denied his request to be removed from Block 2 and that Defendants Gonzalez and Derr told him that if he refused to lock up, he would be taken to SHU. (Id.) Plaintiff alleges that Defendants Clements and Ott gave him twenty (20) days in the SHU but made no mention of whether he would be placed back on Block 2 after he served his sanctioned time for refusing to lock up. (Id.)

Defendants support their motion to dismiss by arguing that Defendant Clements and Ott are supervisory officials and that the complaint does not allege any personal involvement of either Defendant. (Doc. No. 16 at 4.) Defendants further provide that there are no allegations that Defendants Clements and Ott were

8

ever personally notified of any threats made to Plaintiff, or that they had any reason to believe that Plaintiff was subject to a particular risk of harm. (Id.)

As to Defendants Gonzalez and Derr, Plaintiff claims that he informed these Correctional Officers that three inmates approached him and told him that he needed to "get out the block or get beat down if he stayed." (Doc. No. 1 at 5.) Plaintiff alleges that he asked Defendants Gonzalez and Derr to be removed from the block because he has "enemies there and his life was in danger[] because his enemies had just threaten[ed] that they [were] going to jump him if he stayed on the block." (Id.) In response, Defendants Gonzalez and Derr allegedly told Plaintiff that they would not move him and that if he wanted to get off of Block 2, he could refuse to lock up in his cell assignment and they would take him to SHU. (Id.) Plaintiff claims that he chose not to lock up and was taken to SHU. (Id.)

Defendants contend that Defendants Gonzalez and Derr acted reasonably by placing Plaintiff in the restricted housing unit as a result of Plaintiff informing them that he was threatened by three prisoners. (Doc. No. 16 at 7.) Defendant Gonzalez and Derr contend that their only interaction with Plaintiff was twenty days before the date that Plaintiff was assaulted and therefore, they had no involvement in the actual assault. (Id.)

Regarding Defendants Ludwick and Santoni, Plaintiff alleges that when he was released from SHU, he inquired with Defendant Ludwick, who was in charge

9

of processing the release from SHU, as to which block he was assigned. (Doc. No. 1 at 5.) In response, Defendant Ludwick allegedly told Plaintiff that he was going back to Block 2. (Id.) Plaintiff avers that he "voiced his concern for his safety, the threat on his life in the hands of his enemies in Block 2," and again was told by Defendant Santoni "that it was Block 2 or SHU." (Id.)

Defendants Ludwig and Santoni contend that Plaintiff failed to sufficiently allege that either of these Defendants actually knew of Plaintiff's substantial risk of harm and that they acted with a deliberate indifference. (Doc. No. 16 at 8.) Moreover, Defendants argue that because Defendant Santoni provided Plaintiff with placement options – either remain in SHU or return to Block 2 – that this shows that Defendants acted reasonably and defeats any claim for failure to protect. (Id. at 10.)

The Court cannot necessarily agree with Defendants contentions. Accepting as true Plaintiff's allegations, Plaintiff has alleged that during his disciplinary hearing before Defendants Clements and Ott, he explained his refusal to lock up because of the threat to his life he received from inmates Crespo, Pratts, and Martinez on Block 2. (Doc. No. 1 at 5.) Plaintiff further alleges that his request to be removed from Block 2 was denied by Defendants Gonzalez and Derr. (Id.) Plaintiff has alleged that he was removed from Block 2 by Defendants Gonzalez and Derr not out of safety concerns, but rather, because of his refusal to lock up.

10

(Id.)  Plaintiff alleges that Defendants Clements and Ott gave him twenty days in SHU, again, not to protect him from the threat to his health and safety, but rather, for failing to lock up.  (Id.)  Plaintiff further alleges that Defendants Clements and Ott failed to address his concerns of being placed on Block 2 because of the threats to his life by the three inmates.  Similarly, Plaintiff alleges that he informed Defendants Ludwick and Santoni that he was concerned for his safety because of the threat he received from the three inmates on Block 2.

At this stage of the litigation, the Court is concerned only with the facts alleged in the complaint itself.  Plaintiff has pled sufficient facts to demonstrate that each Defendant was aware that three inmates from Block 2 had in fact threatened Plaintiff and was aware of the risk posed by Plaintiff's placement on Block 2.  Despite this knowledge, Defendants failed to take any steps that would decrease the danger to Plaintiff, and this resulted in the attack on Plaintiff by the very three inmates that threatened Plaintiff.  See Farmer, 511 U.S. at 837 (plaintiff must establish that the prison official acted with deliberate indifference, i.e., that the prison official knew of and disregarded an excessive risk to his safety).  Moreover, Defendants' argument that Defendants acted reasonably in response to Plaintiff's report that he was threatened by three inmates appears disingenuous at the current stage.  The allegations in the complaint allege that Plaintiff was placed in SHU not for the safety concerns of Plaintiff, but rather, for Plaintiff's refusal to

lock up. After Plaintiff served the twenty (20) days in SHU for failing to lock up, he was placed back on Block 2.

Moreover, while the Court is cognizant that the "failure of a prison official to act favorably on an inmate's grievance is not itself a constitutional violation," Rauso v. Vaughn, Civ. No. 96-6977, 200 WL 873285, at *16 (E.D. Pa., June 26, 2000), Plaintiff's allegations against Defendants Clements and Ott are concentrated not on an "after-the-fact" review of a grievance Plaintiff filed, but rather, allegations that Plaintiff informed both Defendants in person of the threat to his safety and health, that both Defendants were aware of the risk of harm to Plaintiff but disregarded the risk that the three inmates on Block 2 posed to Plaintiff.[1]

Accepting the allegations as true and drawing all reasonable inferences in favor of Plaintiff, the Court finds that Plaintiff has stated a plausible claim that Defendants violated their constitutional duty to protect him from inmate violence. Accordingly, the motion to dismiss the failure to protect claim against Defendants will be denied. See Bistrian, 696 F.3d at 368-71 (concluding that plaintiff stated plausible failure to protect claim where he alleged, *inter alia*, that he advised

---

[1] Additionally, Defendants' citation to Beaton v. Tennis, 460 F. App'x 111, at *2 (3d Cir. 2012) for the proposition that prison officials cannot be liable for failure to protect based upon a threat that is too attenuated from the incident, is distinguishable from the case at bar. In Beaton, the Plaintiff was assaulted almost two months after he first alleged he was threatened by an inmate. Id. at *5. Here, Plaintiff was severely assaulted within twenty days of informing Defendants of the threats and within fifteen minutes of being placed back on Block 2.

12

prison officials that he had been threatened by a violent inmate who later attacked him).

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss will be denied. An appropriate order follows.

                                    s/Sylvia H. Rambo
                                    SYLVIA H. RAMBO
                                    United States District Judge

Dated: January 8, 2018